IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

ROY E. ERWIN, RUTH ILENE ERWIN ROBERTS, TED BOOHER, and ELIZABETH ANN MCKINNEY, as attorney-in-fact for MARY M. LUNSFORD,

Plaintiffs,

vs.

BRYAN F. RUSS, JR.; JAMES H. MCCULLOUGH; NESTOR LEAMON; PALMOS, RUSS, MCCULLOUGH & RUSS, L.L.P.; L K & P, L.L.C; OAKS & DIAMONDS, L.L.C.; VELNON, L.L.C.; DEMINIMUS MANAGEMENT, L.L.C.; FLARE ROYALTIES, L.L.C.; FLARE ROYALTIES, L.P.; TRAVIS T. MORGAN; ALMA IONE MORGAN; MICHAEL T. MORGAN; LEOR ENERGY, L.P.; ENCANA OIL & GAS (USA), INC.; ZEIG ENTERPRISES, INC.; JAMES ZEIG; and HEARNE BUSINESS PARK, L.L.C.,

Defendants

Case No. W09CA127

**ORIGINAL COMPLAINT**

Now come Roy E. Erwin, Ruth Ilene Erwin Roberts, Ted Booher, and Elizabeth Ann McKinney, Plaintiffs herein, and allege and state the following on information and belief:

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 insofar as the Plaintiffs brings claims against the Defendants under 18 U.S.C. §1964 and 42 U.S.C. §1983.

2. Venue is proper under 29 U.S.C. §1391(b) insofar as most Defendants are located in the Waco Division of the U.S. District Court of the Western District of Texas, and most of the relevant acts took place in the Waco Division.

## Parties

3.      Plaintiff Roy E. Erwin is resident of Reagan, Texas. He is the rightful owner of a portion of the Mineral Interest described below.

4.      Plaintiff Ruth Ilene Erwin Roberts is a resident of Robertson County, Texas. She is a rightful owner of a portion of the Mineral Interest described below.

5.      Plaintiff Ted Booher is a resident of Harris County, Texas.

6.      Plaintiff Elizabeth Ann McKinney is a resident of Kennard, Texas. She is the attorney-in-fact for Mary M. Lunsford, who is the rightful owner of the Mineral Interest described below.

7.      Defendant Brian F. Russ, Jr. is an attorney practicing in Hearne, Texas and residing in Robertson County, Texas.

8.      Defendant James H. McCullough is an attorney practicing in Hearne, Texas and residing in Robertson County, Texas.

9.      Defendant Nestor Leamon is a real estate agent in Franklin, Texas.

10.      Defendant Palmos, Russ, McCullough, & Russ, L.L.P. (hereinafter "The Firm") is a law firm in Hearne, Texas and a limited liability partnership organized under the laws of Texas.

11.      Defendant L K & P, L.L.C. (hereinafter "L K & P") is a limited liability company organized under the laws of Texas. It is owned by Defendants Russ and McCullough.

12.      Defendant Oaks & Diamonds, L.L.C. (hereinafter "Oaks & Diamonds") is a limited liability company organized under the laws of Texas. It is owned by Defendants Russ and McCullough.

13.      Defendant Velnon, L.L.C. (hereinafter "Velnon") is a limited liability company organized under the laws of Texas. It is owned by Defendants Russ and McCullough.

14.     Defendant Deminimus Management, L.L.C. (hereinafter "Deminimus") is a limited liability company organized under the laws of Texas. It is owned by Defendants Russ and McCullough.

15.     Defendant Flare Royalties, L.L.C. is a limited liability company organized under the laws of Texas. It is owned by Defendants Russ and McCullough.

16.     Defendant Flare Royalties, L.P. is a limited partnership whose general partner is Flare Royalties, L.L.C.

17.     Defendant Travis T. Morgan is a resident of Robertson County, Texas.

18.     Defendant Alma Ione Morgan is a resident of Robertson County, Texas. She is the wife of Defendant Travis T. Morgan.

19.     Defendant Michael T. Morgan is a resident of Robertson County, Texas. He is the son of Defendants Travis T. Morgan and Alma Ione Morgan.

20.     Defendant Leor Energy, L.P. (hereinafter "Leor Energy") is a limited partnership headquartered in Houston, Texas.

21.     Defendant Encana Oil & Gas (USA), Inc. (hereinafter "Encana") is a corporation headquartered in Denver, Colorado.

22.     Defendant Zeig Enterprises, Inc. (hereinafter "Zeig Enterprises") is a corporation organized under the laws of Texas and headquartered in Hearne, Texas.

23.     Defendant James Zeig is a resident of Robertson County, Texas. He is the president of Defendant Zeig Enterprises, Inc.

24.     Defendant Hearne Business Park, L.L.C. (hereinafter "Hearne Business Park") is a limited liability company organized under the laws of Texas.

**Introduction**

25. Defendants Russ and McCullough, acting in conjunction with their primary co-conspirator, District Judge Robert M. Stem, have been extorting money and stealing land and mineral interests throughout Robertson County for more than 15 years. Russ and McCullough target three primary groups: poor people, African-Americans, and outsiders, *i.e.*, people who reside outside of Robertson County.

26. When stealing land or mineral interests, Russ and McCullough often use shell companies to create sham transactions. Shell Company A, for example, will purport to transfer its land or mineral interests to Shell Company B, even though Shell Company A never owned the land or mineral interest in the first place. Russ and McCullough, acting through The Firm, then seek a declaratory judgment that Shell Company B owns the land or mineral interest. Judge Stem grants Russ and McCullough permission to serve notice on the allegedly undetermined owners by publication in local newspapers.[1] After the actual owners fail to respond, Judge Stem, at the behest of Russ and McCullough, appoints Dona Harris as attorney ad litem, ostensibly to represent the interests of the actual landowners. On the same day he is appointed, Mr. Harris declares that he cannot locate the actual owners (even though most of them are readily identifiable), and Judge Stem appoints Nestor Leamon as receiver to sell the property. Leamon then sells the property to Russ and McCullough at prices far below market value, and the proceeds are put into the registry of the court. If the actual owners fail to claim the money within seven years, Judge Stem gives it back to Shell Company B, *i.e.*, back to Russ and McCullough.

[1] In at least one instance (described below), where some of the actual owners resided in Robertson County, Judge Stem allowed Russ and McCullough to avoid detection by posting notice in the courthouse and two city halls rather than following the procedural norm of notice by publication.

27.     Another scheme commonly employed by Russ and McCullough involves court-sanctioned extortion. XTO Energy, for example, has been attempting to lay pipeline to connect its gas wells in Robertson County. Whenever XTO seeks to acquire pipeline right-of-way from landowners, The Firm recruits the landowners as clients and demands prices far above the market rate. If XTO declines to pay the extortionate prices and instead seeks to obtain right-of-way by condemnation, Judge Stem consistently appoints the same three special commissioners to determine the right-of-way price, and these commissioners consistently fix prices at 5-10 times the market rate. If XTO wishes to build the pipeline, it must pay the extortionate price or deposit the amount into the court's registry pending appeal.

28.     Judge Stem often meets with Russ and/or McCullough *ex parte* before hearings, and it is widely known in and around Robertson County that Judge Stem will rule in favor of the clients of The Firm with no regard for the law or the facts. In fact, outside plaintiff's attorneys sometimes partner with The Firm, even where a case has little or no connection to Robertson County, because they know that Judge Stem will rule that venue is proper when The Firm requests it, and because they know Judge Stem will rule in The Firm's favor thereafter. For example, *Denise Nichols, et al. v. T.J. Lambrecht Construction, Inc.*, Cause No. 06-11-17666-CV, arose from an automobile accident that killed four people at a Brazos County highway construction site. None of the legitimate parties had any connection to Robertson County. The plaintiffs' attorneys, however, named as defendant a subcontractor from Robertson County that had no relationship to the crash. Judge Stem forced the defendants to go to trial in Robertson County, and the jury awarded more than $3 million to the plaintiffs. The Firm was not satisfied with that amount, however, so it asked Judge Stem to disregard the jury's award and order a new trial on the grounds that the award was too low. Judge Stem ordered a new trial, and the

defendants finally settled for an undisclosed amount. In other words, The Firm appears to have used its connections with Judge Stem to extort a higher settlement from the defendants.

29. The Plaintiffs are aware of occasions when attorneys from outside Robertson County appear to have been run off or bought off. In some instances, when outside attorneys ran up against the corrupt collusion between The Firm and Judge Stem, they gave up and withdrew. On other occasions, outside attorneys appear to have acted contrary to their clients' interests.

30. In this Complaint, the Plaintiffs will detail three major incidents of fraud and racketeering involving Judge Stem, Defendants Russ and McCullough, and one or more additional Defendants. The Plaintiffs are aware of other instances in which land or mineral interests were stolen by Russ, McCullough, and Neamon, and they expect to amend their complaint to add additional plaintiffs and defendants.

## Facts

Theft from the United States Government

31. The First National Bank of Hearne was closed on December 10, 1920, and thereafter a receiver was appointed by the Comptroller of the Currency. On February 14, 1924, R.M. Johnson, the receiver, sold to James A. Thompson a 61.85-acre tract of land that had belonged to the bank. Mr. Johnson reserved ownership of the tract's mineral estate, and thereafter he never sold nor conveyed it. As a result, the mineral estate was held in trust by the United States Government.

32. On October 21, 1999, Defendant L K & P, a shell company, purported to transfer ownership of the aforementioned 61.85-acre mineral estate to Oaks & Diamonds, another shell company. Both companies are owned by Defendants Russ and McCullough, and those Defendants knew that L K & P had no legal title to the mineral estate.

33. On October 25, 1999, Defendant McCullough and The Firm filed suit in the 82nd Judicial District of Robertson County on behalf of Oaks & Diamonds, seeking a declaratory judgment in Cause No. 99-10-15849-CV that Oaks & Diamonds owned the mineral estate. Oaks & Diamonds purported to sue the heirs of R.M. Johnson along with the heirs of bank officials and a subsequent receiver, but neither Johnson nor any other defendants were proper parties insofar as the receivers were merely officers of the United States Government and never owned the 61.85-acre tract nor its mineral estate. The United States was never notified of the suit, nor was it represented. Oaks & Diamonds, Defendant McCullough, and the Firm claimed neither the named defendants nor their heirs could be found, and Judge Robert M. Stem granted permission to serve notice by publication.

34. In a November 4, 1999 letter to Marsha Rekieta, court coordinator for Judge Stem, Defendant McCullough wrote that Mr. Harris had "agreed to serve as an ad litem in [Cause No. 99-10-15849-CV] and be appointed on December 13, 1999, the default date in the citation by posting." On December 13, 1999, Judge Stem appointed Mr. Harris attorney ad litem for the unrepresented parties. In other words, Judge Stem allowed Mr. McCullough to select the attorney for the opposing parties.

35. On the same day he was appointed, Mr. Harris entered an answer for the unrepresented heirs, and Judge Stem signed an order in favor of Oaks & Diamonds without any further inquiry or proceedings. Judge Stem also appointed Defendant Leamon that same day as receiver for the sale of the mineral estate. Mr. Harris's answer and Judge Stem's order were printed in the exact same font and format as Defendant McCullough's original petition, thus it appears that Judge Stem and Mr. Harris were simply following the script prepared for them by Defendant McCullough and The Firm. Moreover, no attorney ad litem can purport to have made

reasonable efforts to contact his unknown clients in less than one day. Mr. Harris knew this, and Judge Stem knew this. Accordingly, one can only conclude that Mr. Harris and Judge Stem colluded with the other Defendants to convert assets that were in the legal possession of the United States.

36. On January 20, 2000, Mr. Leamon filed his report of sale in a font and format identical to that used previously by Defendant McCullough in his petition, and the report was notarized by Mr. McCullough's secretary. Thus it appears that Mr. Leamon, too, was following the script prepared for him by Defendant McCullough and The Firm. According to his report, Mr. Leamon sold the alleged defendants' interest in the mineral estate to Oaks & Diamonds for $6,185.00, a sum far below its actual value. On January 24, 2000, Judge Stem signed a decree confirming the sale to Oaks & Diamonds, and he ordered the money paid into the registry of the court and held for seven years, after which time it would be returned to Oaks & Diamonds. Judge Stem also awarded the Firm $2,500.00 and Defendant Harris $500 in legal fees. In other words, Judge Stem paid The Firm for its role in orchestrating the fraud. The $6,185.00 sales price was returned to Oaks & Diamonds in 2007.

37. On January 20, 2005, Oaks & Diamonds sold one-half of its purported interest in the 61.85-acre mineral estate to Gary and Loretta Waldrop.

<u>The Erwin Heirs</u>

38. In 1998, Plaintiff Ruthie Roberts and her sister met with Defendant Russ at his office to discuss their family's one-half mineral interests in a roughly 157-acre tract in Robertson County (the "Mineral Interest"). Defendant Russ told the ladies that there were so many heirs to the property (hereinafter "Erwin heirs") that it would not be worthwhile to try to determine their interests.

39.     During 2003 and 2004, gas exploration in Robertson County increased dramatically, and the value of mineral interests likewise increased dramatically.

40.     Defendants Travis T. Morgan, Alma Ione Morgan, and Michael T. Morgan (collectively "Morgan Defendants") own the surface estate of the 157-acre Mineral Interest.  On November 8, 2005, the Morgan Defendants and Defendant Russ, acting on behalf of Defendant Flare Royalties, L.P., executed a "Confirmation of Royalties" with Defendant Leor Energy, L.P. The document identified the Morgan Defendants and Flare Royalties as the owners of royalties attributable to slightly more than 552 acres.  The 157-acre Mineral Interest belonging to the Erwin heirs was included in that tract.  This document was not filed with the Robertson County Clerk, however, until August 23, 2006.  The delay in filing is explained by the fact that at the time the document was executed, Defendant Flare Royalties did not own any interest whatsoever in the 157-acre tract, a fact that was known to the Morgan Defendants, Defendant Russ, Defendant Flare Royalties, and Defendant Leor Energy.  These Defendants had conspired to steal the Mineral Interest belonging to the Erwin heirs, therefore they hid the transaction.

41.     In order to create some pretense of a claim to the Mineral Estate, Defendant Russ instigated a series of sham transactions.  On November 22, 2005, Defendant Deminimus, a shell company owned by Russ and McCullough, filed a deed purporting to transfer 90 percent of the Mineral Interest to Defendant Velnon, another shell company owned by Russ and McCullough. Defendant Russ knew that Defendants Deminimus and Velnon did not own any interest in the Erwin property, but he created the sham transactions so he could ultimately purport to transfer the Erwin heirs' property to Defendant Flare Royalties.

42.     On the same day, Defendant Russ filed an Original Petition for Appointment of a Receiver and for Declaratory Judgment in *Velnon, L.L.C. vs. Unknown Heirs of Elizabeth*

*Warren*, Case No. 05-11-17388-CV, 82nd District Court of Robertson County. He also filed a Motion for Substituted Service Other Than Publication (By Posting), seeking to post notice of the lawsuit rather than publish it in the local newspaper, where some of the Erwin heirs might see it. Judge Stem granted the motion, and the notice was posted at the Hearne and Calvert city halls, and at the Robertson County Courthouse.

43. On January 9, 2006, Judge Stem appointed Mr. Harris as attorney ad litem. As usual, Mr. Harris filed a general denial but with no defenses under Rule 93 (or on any other grounds), not motions for continuance, and no other pleadings or motions on behalf of the Erwin heirs.

45. The same day, Judge Stem signed an Order Appointing Receiver, Ordering Sale of Property, and an Order Placing Funds in the Registry of the Court. Defendant Neamon was appointed receiver and also filed a notice of private sale on the same day.

46. On January 20, 2006, the Receiver's Report of Sale was filed stating that the Mineral Interest was sold to Defendant Flare Royalties, L.P., another shell company owned by Russ and McCullough. On January 30, 2006, without further effort to serve or notify the Erwin heirs, and with no objections or defenses raised by Mr. Harris, who ostensibly was representing their interests, Judge Stem signed the Decree Confirming Sale, Authorizing Payment of Fees and Costs, Placing Funds in the Registry of the Court and Authorizing Disbursement After Seven Years. Judge Stem then awarded The Firm $5,253.00 in fees and costs. Once again, Judge Stem awarded The Firm attorney fees for orchestrating a fraud.

47. As noted above, Defendant Russ did not file the November 8, 2005 "Confirmation of Royalties" until August 23, 2006, *i.e.*, after Judge Stem had ratified the fraudulent transfer and after Flare Royalties began receiving royalty checks from Defendant Encana.

48.    On March 27, 2006, Velnon assigned its interest in the proceeds from the sale to Flare Royalties, L.P.

49.    Defendant Leor Energy and Defendant Encana conspired with Russ and McCullough to deprive the Erwin heirs of the royalties from the Mineral Interest. Along with these Defendants, Burlington Resources owned an interest in the production unit into which the Mineral Interest was pooled. Based on its review of public records, Burlington Resources knew that the Mineral Interest belonged to the Erwin heirs and, to its credit, it held their payments in escrow. Defendant Encana, on the other hand, made payments to Russ and McCullough, via Flare Royalties, even though it knew the Mineral Interest belonged to the Erwin heirs. Both Defendant Leor Energy and Defendant Encana were warned about the fraudulent scheme, and Defendant Leor Energy even dispatched a petroleum landman to investigate. The landman met with Kenneth Lunsford, son of Mary M. Lunsford, and subsequently verified what Leor Energy already knew, *i.e.*, that the Erwin heirs were the rightful owners. Despite the warnings, Defendant Encana continued to mail royalty checks to Defendant Flare Royalties.

50.    After learning about the fraud, various Erwin heirs filed a motion for new trial in the aforementioned *Velnon, L.L.C. vs. Unknown Heirs of Elizabeth Warren* on May 5, 2007. Most of the heirs in that action, including Plaintiff Roberts, were represented by Porter & Hedges, L.L.P., a Houston law firm. Other heirs, including Mrs. Lunsford, were represented by Wilshire, Scott, & Dyer, P.C., another Houston law firm. When asked about his participation in the fraud during a deposition, Defendant Leamon said he was only doing what Judge Stem told him to do. Defendant McCullough was present during the deposition and, according to witnesses, Defendant McCullough glared at Defendant Neamon, signaling him to quit talking. The Firm, Russ and McCullough, and the various shell companies quickly settled the claims.

51.     After the motion for new trial was filed, some of the Erwin heirs, including

Plaintiff Erwin, asked one of the Houston firms about joining the case.  Even though there was

no apparent conflict with the interests of the other heirs, these heirs were told they would have to

find their own attorneys elsewhere.

52.     When asked whether Russ and McCullough, et al. could be required to pay

attorney fees, attorneys from the Houston firms either told their respective clients that attorney

fees could not be awarded or that Judge Stem would not award them.  The Houston firms did not

disclose the availability of attorney fees, multiple damages, and punitive damages if the Erwin

heirs were to file a separate lawsuit bringing claims of statutory theft, racketeering, and fraud.

Likewise, the Houston firms did not disclose the option of bringing suit in federal court or a state

court outside of Robertson County, nor did they disclose the possibility of seeking Judge Stem's

disqualification or recusal.  Moreover, the Houston firms failed to disclose that Russ and

McCullough would be allowed to retain ownership of the mineral interests belonging to the

Erwin heirs who had not joined the motion for new trial, which amounted to nearly 20 percent of

the overall Mineral Estate.

53.     On May 16, 2007, *The Bryan-College Station Eagle* ran a front-page story about

the Erwin heirs' motion for new trial.  Early that morning, a Robertson County resident observed

Russ, McCullough, and others removing boxes from the offices of The Firm.

54.     At the time settlement was reached in the summer of 2007, it was abundantly

clear to Judge Stem and all the attorneys involved – including the Houston firms – that Russ and

McCullough had perpetrated an enormous fraud, and it was equally clear that, under the terms of

the proposed settlement agreement, they would be allowed to retain almost 20 percent of the

mineral interests they had stolen.  No one, however, lifted a finger to protect the interests of the

remaining victims of Russ and McCullough's fraud.  Judge Stem did not appoint another

attorney ad litem, and he did not order the stolen royalties placed into the registry of the court.

He simply allowed the ongoing theft to continue.  Plaintiff Erwin was among the heirs whose

stolen interest was retained by Russ and McCullough after the settlement.  Further discovery will

likely reveal that Defendant Encana is still mailing Plaintiff Erwin's royalty payments to Russ

and McCullough (via Flare Royalties, L.P.).[2]

Ted Booher

55.     During August of 2006, Plaintiff Ted Booher contracted with Defendant Zeig

Enterprises, Inc., to purchase 15.4 acres of real estate in Hearne, Texas for $400,000.00.

Plaintiff Booher gave $10,000.00 to The Firm to be held in escrow.  After the agreement was

reached, but before closing, Plaintiff Booher learned about environmental hazards on the

property, and he spent approximately $150,000.00 to clean up the property.  The Small Business

Administration had tentatively approved a loan for the purchase, but it could not be finalized

until the property was decontaminated.

56.     With the permission of Defendant Zeig Enterprises, Inc., Plaintiff Booher began

storing some of his equipment on the property in Hearne.

57.     At some point between the initial contract and closing, Defendant McCullough

decided he wanted the real estate, and he colluded with Defendant James Zeig, president of

Defendant Zeig Enterprises, to subvert the contract.  On October 4, 2007, Defendant Zeig

[2] Pursuant to Tex. Disciplinary R. Prof. Conduct 8.03(a), the undersigned filed a grievance against Defendant Russ and Defendant McCullough with the State Bar of Texas regarding the misconduct set forth in Paragraphs 31-36 of this Complaint. The undersigned included a copy of *United States ex. rel. Ty Clevenger v. Bryan F. Russ, et al.*, Case No. 6:08-cv-00259-WSS (W.D. Tex.) which also summarized the misconduct set forth in Paragraphs 38-54 of this Complaint. The Office of Chief Disciplinary Counsel dismissed the grievance on the grounds that it failed to state a violation of the disciplinary rules. The Board of Disciplinary Appeals upheld the dismissal. This leads the undersigned to wonder how many felonies a lawyer must commit in order to merit an investigation, much less disciplinary action, by the State Bar of Texas.

Enterprises sent a notice scheduling the closing for October 12, 2007, even though the decontamination had not yet been completed.  On October 10, 2007, Defendant McCullough formed Defendant Hearne Business Park, LLC, and on or about October 15, 2007 Defendant Hearne Business Park, LLC purchased the property from Defendant Zeig Enterprises.

58.     Plaintiff Booher immediately filed suit in state court, and he filed a lis pendens with the Robertson County Clerk for the $150,000 in improvements he had made to the property. Shortly thereafter, the lis pendens was inexplicably set aside by Judge Stem.  Plaintiff Booher filed a motion to disqualify Defendants Russ, McCullough, and The Firm since The Firm was serving as escrow for the transaction, but Judge Stem denied the motion to disqualify.  Judge Stem denied Plaintiff's request for a temporary restraining order and ultimately granted summary judgment in favor of Defendants Zeig Enterprises and Hearne Business Park as well as one other defendant.

59.     In 2008, The Firm filed suit on behalf of Defendant Hearne Business Park against Plaintiff Booher, seeking $200,000.00 for the purported rent due because Plaintiff Booher's equipment had been stored on the property.  Defendant McCullough was seeking to coerce Plaintiff Booher to abandon his claims to the disputed property.  Judge Stem issued a $200,000 lien against the equipment, allegedly attributable to the rental value of the property, even though the purchase price of the property was only $400,000.00.  As a result, Plaintiff Booher has been unable to remove nearly $1 million worth of his equipment.  Defendant McCullough, acting through Judge Stem, is seeking to extort money from Plaintiff Booher by forcing him to pay outrageous rental charges or lose the use of his equipment.

**Claims**

*Civil Conspiracy*

60. All the Defendants participated in a civil conspiracy and therefore are liable for the acts of one another. However, notwithstanding any other provision herein, Plaintiffs Roberts and McKinney do not bring any claims of any kind against the Defendants with whom they have already settled, *i.e.*, Defendants Russ, McCullough, The Firm, Leamon, L K & P, Oaks & Diamonds, Deminimus, Velnon, Flare Royalties, L.P., and Flare Royalties, L.L.C., nor do they seek any damages from them.

*Racketeering*

61. All previous paragraphs are incorporated herein by reference.

62. Defendants Russ, McCullough, Leamon, The Firm, L K & P, Oaks & Diamonds, Velnon, Deminimus, Flare Royalties, L.L.C., Flare Royalties, L.P., Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, Encana, Zeig Enterprises, James Zeig, and Hearne Business Park are liable for damages under 18 U.S.C. §1964 insofar as they participated in or colluded with a racketeering enterprise. These defendants repeatedly used the United States mail in furtherance of their schemes to defraud the Plaintiffs.

63. Plaintiffs Erwin and Booher bring racketeering claims against all Defendants. Plaintiffs Roberts and McKinney bring racketeering claims against all Defendants except those with whom they have previously settled, *i.e.*, Defendants Russ, McCullough, Leamon, The Firm, Velnon, Deminimus, Flare Royalties, L.L.C., and Flare Royalties, L.P.

*Civil Rights Act*

64. All previous paragraphs are incorporated herein by reference.

65. Defendants Russ, McCullough and The Firm conspired with Judge Stem to deny

the Plaintiffs their rights to due process and equal protection guaranteed by the United States Constitution. All the remaining Defendants conspired to participate in the schemes that led to the denial of these rights, therefore all Defendants are liable for damages under 42 U.S.C. §1983.

66.     Plaintiffs Erwin and Booher bring claims under 42 U.S.C. §1983 against all Defendants. Plaintiffs Roberts and McKinney bring claims under 42 U.S.C. §1983 against all Defendants except those with whom they have previously settled, *i.e.*, Defendants Russ, McCullough, Leamon, The Firm, Velnon, Deminimus, Flare Royalties, L.L.C., and Flare Royalties, L.P.

*Fraud*

67.     All previous paragraphs are incorporated herein by reference.

68.     All the Defendants are liable for fraud.

69.     Plaintiffs Erwin and Booher bring claims for fraud against all Defendants. Plaintiffs Roberts and McKinney bring fraud claims against all Defendants except those with whom they have previously settled, *i.e.*, Defendants Russ, McCullough, Leamon, The Firm, Velnon, Deminimus, Flare Royalties, L.L.C., and Flare Royalties, L.P.

*Theft Liability Act*

70.     All previous paragraphs are incorporated herein by reference.

71.     Defendants Russ, McCullough, Leamon, The Firm, L K & P, Oaks & Diamonds, Velnon, Deminimus, Flare Royalties, L.L.C., Flare Royalties, L.P., Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana are liable for damages under the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §§134.001-134.005.

72. Plaintiff Erwin brings claims of theft against all the Defendants identified in Paragraph 71 of this Complaint. Plaintiffs Roberts and McKinney bring claims of theft against

Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana.

*Breach of Fiduciary Duty*

73.     All previous paragraphs are incorporated herein by reference.

74.     Dona Harris and Defendant Leamon breached their fiduciary duties to the Erwin

heirs, and Defendants Russ, McCullough, The Firm, Deminimus, Flare, Velnon, Travis T.

Morgan, Alma Ione Morgan, Michael T. Morgan, and Leor Energy conspired with them to

breach their fiduciary duties.

75.     Plaintiff Erwin brings claims for breach of fiduciary duty against all Defendants

identified in Paragraph 74 of this complaint.  Plaintiffs Roberts and McKinney bring claims for

breach of fiduciary duty against Defendants Travis T. Morgan, Alma Ione Morgan, Michael T.

Morgan, and Leor Energy.

*Conversion*

76.     All previous paragraphs are incorporated herein by reference.

77.     Defendants Russ, McCullough, Leamon, The Firm, L K & P, Oaks & Diamonds,

Velnon, Deminimus, Flare Royalties, L.L.C., Flare Royalties, L.P., Travis T. Morgan, Alma Ione

Morgan, Michael T. Morgan, Leor Energy, and Encana are liable for damages for conversion.

78.  Plaintiff Erwin brings claims for conversion against all the Defendants identified in

Paragraph 77 of this Complaint.  Plaintiffs Roberts and McKinney bring claims of conversion

against Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana.

*Tortious Interference*

79.     All previous paragraphs are incorporated herein by reference.

80.     Defendants McCullough, The Firm, and Hearne Business Park are liable to

Plaintiff Booher for damages for tortuously interfering with his contract and his business

relationship with Defendant Zeig Enterprises.

*Equitable Accounting*

79.    All previous paragraphs are incorporated herein by reference.

80.    Plaintiff Erwin demands an equitable accounting from Defendants Russ, McCullough, Leamon, The Firm, L K & P, Oaks & Diamonds, Velnon, Deminimus, Flare Royalties, L.L.C., Flare Royalties, L.P., Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana.  Plaintiffs Roberts and McKinney demand an equitable accounting from Defendants Travis T. Morgan, Alma Ione Morgan, Michael T. Morgan, Leor Energy, and Encana.

**Prayer for Relief**

Wherefore, the Plaintiffs request that this Court:

a. Award compensatory damages against the Defendants;

b. Award treble damages against the Defendants;

c. Award punitive damages against the Defendants;

d. Award costs of this action to the Plaintiffs;

e. Award reasonable attorney fees and costs to the Plaintiffs;

f. Order an equitable accounting; and

e. Award all other relief to which the Plaintiffs are entitled.

Respectfully submitted,

5/18/09

Ty Clevenger
Texas Bar No. 24034380
1716 Briarcrest Drive, Suite 206
Bryan, Texas 77803
Phone: (979) 985-5289
Fax: (979) 530-9523

ATTORNEY FOR PLAINTIFFS

JURY TRIAL DEMANDED

W09CA127

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

(b) County of Residence of First Listed Plaintiff Falls
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Ty Clevenger
P.O. Box 4806
Bryan, Texas 77805 / (979) 260-7030

## DEFENDANTS

County of Residence of First Listed Defendant Robertson
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☒ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
18 U.S.C. 1964

Brief description of cause:
Racketeering claim based on extortion and mail fraud

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE DOCKET NUMBER

DATE: May 18, 2009

SIGNATURE OF ATTORNEY OF RECORD: [signature]

FOR OFFICE USE ONLY

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

INTAKE COPY

# FILING FEE RECEIPT COPY

DUPLICATE

Court Name: TEXAS WESTERN
Division: 6
Receipt Number: 600001491
Cashier ID: mcunning
Transaction Date: 05/18/2009
Payer Name: Ty Clevenger

---

CIVIL FILING FEE
For: Ty Clevenger
Amount: $350.00

---

CHECK
Remitter: Ty Clevenger
Check/Money Order Num: 1008
Amt Tendered: $350.00

---

Total Due: $350.00
Total Tendered: $350.00
Change Amt: $0.00

Civil Case Filing Fee: ~~Rowy~~ Roy E. Erwin, et al VS Bryan F. Russ, Jr., et al -- W-09-CV-127.